IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| LADONNA CREAMER,                 )<br>                                                     )<br>           Plaintiff,                         )<br>                                                     )<br>     v.                                           )<br>                                                     )<br>CAROLYN W. COLVIN,            )<br>Acting Commissioner of Social Security,  )<br>                                                     )<br>           Defendant.                      ) | Civil Action No.: 3:15cv185-WC |

**MEMORANDUM OPINION**

**I.     INTRODUCTION**

Ladonna Creamer ("Plaintiff") filed an application for social security income under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*, on December 5, 2011. Her application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued a decision finding Plaintiff not disabled from the application date of December 5, 2011, through the date of the decision. Plaintiff appealed to the Appeals Council, which rejected her request for review of the ALJ's decision. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

129, 131 (11th Cir. 1986). The case is now before the court for review under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 9); Def.'s Consent to Jurisdiction (Doc. 10). Based on the court's review of the record and the briefs of the parties, the court REVERSES the decision of the Commissioner and REMANDS the matter for further proceedings.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

---

[2]   A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id*. at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical

---

[3]   *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases. *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

Vocational Guidelines[4] ("grids") or call a vocational expert ("VE").  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual.  *Phillips*, 357 F.3d at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.

The court's review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.").  A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings.  . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied

---

4   *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

4

in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III. ADMINISTRATIVE PROCEEDINGS

Plaintiff was twenty years old on the application date, and had completed the ninth grade. Tr. 36, 39. Following an administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since December 5, 2011, the application date[.]" Tr. 14. At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments: "obesity; bipolar disorder; malingering; and intellectual disability - borderline intellectual functioning ("BIF")." Tr. 14. At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" Tr. 15. Next, the ALJ articulated Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except the claimant can never climb ladders, ropes, or scaffolds. The claimant can never be exposed to dangerous machinery, dangerous tools, hazardous processes, or unprotected heights. The claimant can never operate a commercial motor vehicle. The claimant can be exposed to moderate noise levels. The claimant can only remember short, simple instructions and would be unable to deal with detailed instructions. She can do simple, routine, and repetitive tasks but is unable to do detailed or complex tasks. She would be able to accept constructive non-confrontational criticism, work in small group settings, and be able to accept changes in the workplace setting if introduced gradually and infrequently. The claimant is limited to simple work-related decisions. She can have frequent interaction with supervisors but only occasional interaction with co-workers and the public. She is unable to perform assembly line work with production-rate pace but can perform goal-oriented work with supervision and periodic reminders regarding

5

production requirements. Any time off task would be accommodated by normal workday breaks.

Tr. 17. Having consulted with a VE at the hearing, the ALJ concluded at Step Four that Plaintiff had no past relevant work experience. Tr. 22. Finally, at Step Five, and based upon the testimony of the VE, the ALJ determined that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." Tr. 22. The ALJ identified several representative occupations, including "Packager," "Store Laborer," and "Dietary Aide." Tr. 23. Accordingly, the ALJ determined that Plaintiff "has not been under a disability . . . from December 5, 2011, the date the application was filed[.]" Tr. 23-24.

## IV. PLAINTIFF'S CLAIMS

Plaintiff presents two issues for the court to consider in its review of the Commissioner's decision. First, Plaintiff argues that the Commissioner's decision should be reversed because the ALJ "erred by failing to provide adequate rationale addressing the medical opinions of record expressed by [Plaintiff's] treating physician." Pl.'s Br. (Doc. 14) at 3. Second, Plaintiff argues that the Commissioner's decision should be reversed because the ALJ "failed to apply the correct legal standards in evaluating [Plaintiff's] Intellectual Disability." *Id.*

## V. DISCUSSION

### A. The ALJ discounted Plaintiff's treating physician's medical opinion without good cause.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Absent "good cause," an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also* 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2). Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate [the] reasons" for doing so. *Id.* at 1240–41.

Moreover, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981). Therefore, when the ALJ fails to "state with at least some measure of

7

clarity the grounds for his decision," a court will decline to affirm "simply because some rationale might have supported the ALJ's conclusion." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam).  In such a situation, "to say that [the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Cowart*, 662 F.2d at 735 (quoting *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir.1979)) (internal quotation marks omitted).

Plaintiff argues that the ALJ erred because he failed to provide adequate rationale for discounting the medical opinions expressed by Plaintiff's treating physician, Dr. Schuster.  (Doc. 14) at 3.  The court agrees.

With regards to his consideration of Dr. Schuster's medical opinion, the ALJ states:

> Robert [Schuster][5], M.D., completed a Medical Source Statement ("MSS") on May 2, 2013 wherein he opined that the claimant had marked limitation in some areas of understanding, remembering and carrying out instructions as well as sustaining concentration and persistence.  Additionally, Dr. [Schuster] opined that the claimant had the most limitation in terms of interacting appropriately with supervisors, co-workers, and the public or changes in routine work setting.  **Despite these findings of marked limitation however, the undersigned notes that the majority of Dr. [Schuster's] findings reflected only moderate limitation.**  Nevertheless, the undersigned afforded his MSS some weight, to the extent that it is consistent with [the] objective record and the residual functional capacity highlighted above.

Tr. at 21.  (emphasis in original).

---

[5] The ALJ's opinion refers to Plaintiff's treating physician as Dr. Schultz, but the evidentiary record reflects that she received treatment from Dr. Robert Schuster.  Tr. 272.

8

The ALJ's justification for discounting Dr. Schuster's medical opinion – that Dr. Schuster identified some of Plaintiff's limitations as "moderate" and others as "marked" in Plaintiff's MSS – in no way provides the "good cause" required to discount a treating physician's medical opinion. Indeed, the fact that Dr. Schuster identified differing degrees of Plaintiff's limitations is the point of the MSS. To the extent the ALJ made such a statement with the implication that Dr. Schuster's findings of marked and/or moderate limitations contradicted the medical evidence presented in the record, that implication would be unfounded. Plaintiff's medical records from Dr. Schuster support, and do not contradict, his determinations concerning Plaintiff's limitations as measured by the MSS.[6] The ALJ's opinion does not point to any differences because the ALJ does not address other records from Dr. Schuster. Further, medical evidence in the record

---

[6] During Plaintiff's treatment sessions with Dr. Schuster, Dr. Schuster noted that Plaintiff suffered from mood swings, manic episodes, sleep problems, racing thoughts, and poor concentration. Tr. 255-62, 273-88. Dr. Schuster diagnosed Plaintiff with bipolar disorder, ADD, NOS, and Mild Mental Retardation, and he prescribed several medications for treatment. *Id*. In completing the MSS, Dr. Schuster noted that Plaintiff had the following *moderate* limitations: Understand and remember simple instructions; Carry out simple instructions; The ability to make judgments or simple work-related decisions; Understand and remember complex instructions; Interact appropriately with the Public; Interact appropriately with Supervisor(s); Interact appropriately with co-workers; Respond appropriately to usual work situations and to changes in a routine work setting; The ability to ask simple questions or request assistance; The ability to maintain attention and concentration for extended periods; The ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and The ability to sustain an ordinary routine without special supervision. Tr. 290-92. He noted the following *marked* limitations: Carry out complex instructions; The ability to make judgments on complex work-related decisions; The ability to remember locations and work-like procedures; The ability to accept instructions and respond appropriately to criticism from supervisors; The ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; The ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; The ability to be aware of normal hazards and take appropriate precautions; The ability to travel in unfamiliar places or use public transportation; The ability to set realistic goals or make plans independently of others; and The ability to work in coordination with or proximity to others without being distracted by them. Tr. 290-92. Dr. Schuster attributed these limitations to Plaintiff's bipolar disorder, mental retardation, and ADD. Tr. 290-92. He noted that Plaintiff was unable to count money or tell time. Tr. 292. He also opined that Plaintiff could not manage benefits in her own best interest, that she could not make appropriate work decisions, and that she would likely be absent from work as a result of her impairments for more than four days per month. Tr. 292. Dr. Schuster noted that these impairments were found when Plaintiff was in tenth grade, but were likely present since childhood. Tr. 292.

from Dr. Clark, who provided a one-time psychiatric consult of Plaintiff, also validates – with minor discrepancies – the opinions of Dr. Schuster in the MSS.[7] While there is evidence in the record to indicate that Plaintiff might have been malingering, only one consultative physician, Dr. Brantley, came to that conclusion.[8] Tr. 270.

The ALJ's discount of Dr. Schuster's MSS is also concerning considering that the ALJ afforded the opinions of Dr. Clark and Dr. Brantley, who were both one-time consultative physicians, with "substantial weight." Tr. 20. Other than a blanket statement regarding the consistency, or lack thereof, of Dr. Schuster's medical opinion with the objective record, the ALJ provides no additional support for discrediting Dr. Schuster's medical opinion. Tr. 21. Without more, the court "cannot affirm based on a post hoc rationale that 'might have supported the ALJ's conclusion.'" *Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 733 (11th Cir. 2011) (citing *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)). Accordingly, this case is due to be remanded back to the ALJ. *See, e.g., Dempsey*, 454 F. App'x at 733 ("Without a clear explanation of the ALJ's treatment of [a treating physician's] opinion, we cannot determine whether

---

[7] The opinion of Dr. Clark, to whom the ALJ afforded significant weight, suggests similar findings to those of Dr. Schuster. As part of a psychiatric consult examination, Dr. Clark determined that Plaintiff suffered from depressive disorder and that her intellectual abilities likely fall in the mild range of mental retardation to borderline range. Tr. 267. Dr. Clark also found that Plaintiff is mildly impaired in her ability to understand instructions, and moderately impaired in her ability to remember and carry out instructions, and in her ability to respond appropriately to supervision, coworkers, and work pressures in a work setting. Tr. 267. Other than determining that Plaintiff was mildly impaired to understand instructions when Dr. Schuster determined that Plaintiff was moderately impaired in that area, the opinions of Dr. Schuster and Dr. Clark are similar.

[8] The ALJ afforded Dr. Brantley's assessment "significant weight," noting that Dr. Brantley found no evidence of mental illness or mood disorder, and that Plaintiff was only mildly immature with mild cognitive diminishment. Tr. 20. However, it is important to note that Plaintiff was sent to Dr. Brantley for the purpose of IQ testing with an administration of the WAIS-IV. Tr. 270. Prior to testing, Dr. Brantley interviewed Plaintiff. Tr. 270. It is from that interview that Dr. Brantley made his observations about Plaintiff's mood, mental illness, and malingering. Tr. 270.

the ALJ's ultimate decision on the merits was rational and supported by substantial evidence.") On remand, if the ALJ decides to discount Dr. Schuster's medical opinion, adequate reasons supported by substantial evidence should be clearly articulated.

   **B. The ALJ improperly evaluated Plaintiff's intellectual disability.**

Listing 12.05 sets forth the requirements for mental retardation.[9] In order to meet the Listing, a claimant must meet the diagnostic description in the introductory paragraph and any one of the four sets of criteria in paragraphs A – D. The introductory paragraph states:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e*., the evidence demonstrates or supports onset of the impairment before age 22.

20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05 (2012). Thus, to meet the introductory paragraph, a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22. *Crayton v. Callahan,* 120 F.3d 1217, 1219 (11th Cir. 1997).

If a claimant satisfies the introductory paragraph, she must then meet the requirements in paragraphs A, B, C, or D to satisfy the listing. To meet paragraph C,[10] a

---

[9] On August 1, 2013, the Social Security Administration (SSA) changed the terminology in Listing 12.05 from "mental retardation" to "intellectual disability." *See Hickel v. Comm'r of Soc. Sec.,* 539 F. App'x 980, 982 n.2 (11th Cir. 2013) (acknowledging a change in terminology). Because the ALJ issued his decision prior to the change in terminology, the court will use the terminology from Listing 12.05 in effect at the time of the ALJ's decision.

[10] Because Plaintiff disputes only that the ALJ erred in concluding that she failed to meet Listing 12.05(c), the court will address only the requirements in paragraph C.

claimant must have "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05 (2012). "Generally, a claimant meets the criteria for presumptive disability under section 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." *Lowery v. Sullivan,* 979 F.2d 835, 837 (11th Cir. 1992).

Plaintiff argues that the ALJ erred in his evaluation of paragraph C when he found that "while [Plaintiff] had other impairments – they did not significantly impact her functional ability to do basic work." (Doc. 14) at 14. Specifically, Plaintiff asserts that the ALJ's finding directly conflicts with the ALJ's Step Two determination in which he found that Plaintiff "suffered from the additional medically severe impairments of obesity and bipolar disorder" under 20 CFR 416.920(c). *Id.* The court agrees, and notes an additional concern with the ALJ's analysis.

With regards to Listing 12.05(C), the ALJ states:

Finally, the "paragraph C" criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. Although the undersigned found the claimant to have other impairments – they do not significantly impact the claimant's functional ability to do basic work.

Tr. 16. Of initial concern is the ALJ's failure to explicitly address whether Plaintiff met the requirements of the introductory paragraph of the listing. Instead, the ALJ proceeded

directly to analyze whether Plaintiff met the requirements for paragraph C, in addition to Listing 12.05's paragraphs A, B and D, as well as Listing 12.04's paragraphs B and C.  It appears from that progression of analysis that the ALJ *may* have concluded that Plaintiff met the diagnostic description set forth in the introductory paragraph of Listing 12.05.  While that would make logical sense, the ALJ does not explicitly make such a finding.  Therefore, the court is unable to conduct a proper meaningful review of whether substantial evidence supported the ALJ's determination that Plaintiff did not meet the listing. [11]  *See Thomas v. Barnhart*, 2004 WL 3366150, at *2 (11th Cir. Dec. 7, 2004).

Assuming *arguendo* that the ALJ determined – albeit implicitly – that Plaintiff met the introductory paragraph of Listing 12.05, the ALJ's reason for concluding that Plaintiff did not meet Listing 12.05(C) is legally inadequate.  Because the ALJ determined, at Step Two, that Plaintiff suffered from the severe impairments of obesity and bipolar disorder, the ALJ could not then determine in paragraph C that those impairments did not significantly impact the claimant's functional ability to do basic work.  The court agrees with Plaintiff that the ALJ's determination directly conflicts with his previous finding that plaintiff suffers from the severe impairments of obesity and bipolar disorder.  Accordingly, the reason expressed by the ALJ for determining that Plaintiff failed to meet Listing 12.05(C) is legally inadequate.  *See Carroll v. Astrue*, No. 1:08cv74-SRW, 2009 WL 1708073, at *1-2 (M.D. Ala. June 17, 2009).  Accordingly, this case is due to be

---

[11] The court notes that substantial evidence might indeed exist, as Defendant argues, that Plaintiff does not meet the "significant loss of adaptive functioning" requirement for Listing 12.05's introductory paragraph.  However, the court cannot conduct a review of that evidence because the ALJ did not choose to address the introductory paragraph at all.

remanded back to the ALJ.  On remand, the ALJ should evaluate whether Plaintiff meets the introductory paragraph for Listing 12.05, and make those findings explicit in his opinion.  Further, if the analysis proceeds to an evaluation of paragraph C, the ALJ may not find that Plaintiff does not meet the listing because she does not have a physical or other mental impairment imposing an additional and significant work-related limitation of function if the ALJ determined that Plaintiff had severe impairments at Step Two.

Because the ALJ failed to explicitly evaluate whether Plaintiff met the introductory paragraph of Listing 12.05, and because the ALJ determined Plaintiff failed to meet paragraph C on a legally insufficient basis, the matter is due to be remanded so that the ALJ can clarify his findings and determine if Plaintiff meets Listing 12.05.

## VI. CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is REVERSED and this matter is REMANDED back to the Commissioner.  A separate judgment will issue.

Done this 30th day of March, 2016.

/s/ Wallace Capel, Jr.
UNITED STATES MAGISTRATE JUDGE